**WARREN TERZIAN LLP**
Thomas D. Warren (CA 160921)
tom.warren@warrenterzian.com
Dan Terzian (CA 283835)
dan.terzian@warrenterzian.com
222 N Pacific Coast Hwy, Ste 2000
Los Angeles, CA 90245-5614
Telephone: (213) 410-2620

*Attorneys for Plaintiff*
*and Proposed Class Counsel*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA VELASQUEZ, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>LUXOTTICA OF AMERICA, INC., an Ohio corporation; and JOHN DOES 1–10,<br><br>Defendants. | Case No. 2:25-cv-00074-MCS-PVC<br><br>**Second Amended Class Action Complaint**<br><br>**1. Unfair Competition (California Business & Professions Code § 17200 *et seq.*);**<br><br>**2. False Advertising (California Business & Professions Code § 17500 *et seq.*); and**<br><br>**3. Violations of the Consumer Legal Remedies Act (California Civil Code § 1750 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |



WARREN TERZIAN LLP

Plaintiff Melissa Velasquez ("Plaintiff") brings this action, on behalf of herself and all others similarly situated, against Defendant Luxottica of America, Inc. ("Luxottica"), an Ohio corporation, and John Does 1–10 (collectively "LensCrafters" or "Defendants"), and states:

## I. Introduction

1. In EssilorLuxottica S.A.'s Code of Ethics, the company professes that it "believe[s] in providing transparent, timely, fair and accurate information" to "customers and consumers."[1]

2. Yet when it comes to selling prescription glasses to California consumers, Defendants do not provide transparent, fair, or accurate information. To the contrary, they act unlawfully.

3. EssilorLuxottica is the largest eyewear retailer in the world, with annual revenue in 2023 exceeding $24 billion, of which more than $11 billion was generated in the United States. It is an Italian-French vertically integrated multinational corporation based in Paris. Through wholly owned subsidiaries, it owns Defendant Luxottica of America, Inc., which owns LensCrafters, Pearle Vision, Target Optical, Sunglass Hut, and Vision Source, among other entities.

4. EssilorLuxottica is also the world's largest manufacturer of prescription lenses for glasses.

5. LensCrafters operates approximately 1000 retail stores in the United States, of which 139 are in California, as well as many websites, including lenscrafters.com, eyebuydirect.com, and framesdirect.com.

6. LensCrafters retail stores and lenscrafters.com are engaged in a false advertising scheme. LensCrafters falsely advertises that its glasses are discounted from a regular price, and that the discounts are available for a limited time. In truth, LensCrafters sells its glasses at a discounted price continuously, replacing each

[1] https://www.essilorluxottica.com/en/cap/content/97384/.

expiring offer with another. The regular price from which those discounts are measured is a price LensCrafters does not charge for the glasses it advertises.

7. This false discount scheme has two components. First, LensCrafters advertises glasses as discounted from a regular price that it does not charge for the glasses it advertises. Second, Defendants inflate the stated lens price from which those discounts are measured—a practice known as false reference pricing. Both are designed to lure consumers into believing they are getting substantial discounts when they are not.

8. Through this false discount scheme, Defendants have violated California's unfair competition and false advertising laws.

9. This class action seeks restitution for California consumers who purchased products from Defendants that were falsely advertised as discounted, as well as public injunctive relief to protect potential future consumers in California from Defendants' false discount scheme.

## II. Jurisdiction and Venue

10. This Court has subject matter jurisdiction over the first, third, and fourth causes of action; the second cause of action should be remanded to state court.

11. The Court has personal jurisdiction over Defendants. Events giving rise to the cause of action occurred in California as a result of Defendants' conduct directed toward California consumers, they directed the sale of their products to California consumers, and they made misrepresentations toward California consumers who viewed and relied on those misrepresentations.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District.

## III. Parties

13. Plaintiff Melissa Velasquez is a resident of the State of California. Plaintiff purchased eyeglasses from Defendants.

14. Defendant Luxottica of America, Inc. is an Ohio corporation. It dispenses

prescription eyeglasses to California consumers through its LensCrafters retail stores in California and through lenscrafters.com. Luxottica of America, Inc. is registered with the California State Board of Optometry under Chapter 5.5 of Division 2 of the Business and Professions Code (Bus. & Prof. Code § 2550 et seq.) to dispense prescription ophthalmic devices in California as a registered dispensing ophthalmic business, Registration No. 71488, and its California stores dispense prescription lenses through registered dispensing opticians.

15. Plaintiff does not know the names of the defendants sued as John Does 1–10 but will amend this complaint when that information becomes known. Plaintiff alleges on information and belief that each of the Doe defendants is affiliated with Luxottica in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, a principal, an agent, a successor, an alter ego, a co-conspirator, or an aider-and-abettor.

16. Plaintiff is informed and believes that at all times material hereto and mentioned herein, each Defendant sued herein was the agent, servant, employer, joint venturer, partner, subsidiary, parent, division, alias, alter ego, co-conspirator, and/or aider-and-abettor of the other Defendants. Plaintiff is also informed and believes that, at all times, each Defendant was acting within the purpose and scope of such agency, servitude, employment, ownership, subsidiary, alias, and/or alter ego and with the authority, consent, approval, control, influence, and ratification of each remaining Defendant sued herein.

## IV. General Allegations

17. Defendants are engaging in a false discount scheme in the marketing and selling of their prescription glasses.

18. LensCrafters advertises limited-time offers that a "complete pair" of glasses—frames and lenses—is on sale. Depending on the month, it advertises the discount on glasses in one of two ways: it either advertises "___% off prescription glasses [or frames + lenses]," or "___% off lenses with frame purchase." Each "sale"

has an expiration date, and a new "sale" follows each expiration date. Examples of both formats (from the Internet Archive's "Wayback Machine") are shown below (the first from April 2025 and the second from November 2024):







19. A monthly sample of cached pages on the Wayback Machine of lenscrafters.com from December 2020 to the present (the UCL class period) reflects that month in and month out, LensCrafters offers limited-time "discounts" on prescription glasses in one of these two ways:

| | |
|---|---|
| 12/2/2020 | 40% off prescription lenses with frame purchase |
| 1/6/2021 | 40% off prescription lenses with frame purchase |
| 2/14/2021 | 40% off lenses with frame purchase |
| 3/6/2021 | 50% off lenses with frame purchase |
| 4/11/2021 | 40% off lenses with frame purchase |
| 5/3/2021 | 50% off lenses with frame purchase |
| 6/16/2021 | 40% off lenses with frame purchase |
| 7/18/2021 | 50% off lenses with frame purchase |
| 8/11/2021 | 50% off lenses with frame purchase |
| 9/17/2021 | 40% off lenses with frame purchase |
| 10/27/2021 | 30% off a complete pair (frame + lenses) |
| 11/17/2021 | 50% off lenses with frame purchase |
| 12/10/2021 | 40% off lenses with frame purchase |
| 1/5/2022 | 40% off lenses with frame purchase |

| | |
|---|---|
| 2/17/2022 | 30% off a complete pair (frame and lenses) |
| 3/18/2022 | 50% off lenses with frame purchase |
| 4/6/2022 | 40% off lenses with frame purchase |
| 5/18/2022 | 50% off lenses with frame purchase |
| 6/1/2022 | 30% off complete pair (frame + lenses) |
| 7/6/2022 | 50% off lenses with frame purchase |
| 8/30/2022 | 50% off lenses with frame purchase |
| 9/6/2022 | 40% off lenses with frame purchase |
| 10/5/2022 | 30% off complete pair (frame + lenses) |
| 11/12/2022 | 50% off lenses with frame purchase |
| 12/23/2022 | 40% off lenses with frame purchase |
| 1/28/2023 | 40% off lenses with frame purchase |
| 2/8/2023 | 30% off complete pair (frame + lenses) |
| 3/23/2023 | 50% off lenses with frame purchase |
| 4/27/2023 | 40% off lenses with frame purchase |
| 5/15/2023 | 50% off lenses with frame purchase |
| 6/20/2023 | 40% off lenses with frame purchase |
| 7/22/2023 | 50% off lenses with frame purchase |
| 8/22/2023 | 50% off lenses with frame purchase |
| 9/5/2023 | 40% off lenses with frame purchase |
| 10/29/2023 | 40% off lenses with frame purchase |
| 11/12/2023 | 50% off lenses with frame purchase |
| 12/17/2023 | 40% off lenses with frame purchase |
| 1/19/2024 | 40% off lenses with frame purchase |
| 2/9/2024 | 40% off lenses with frame purchase |
| 3/12/2024 | 50% off lenses with frame purchase |
| 4/13/2024 | 40% off lenses with frame purchase |
| 5/8/2024 | 50% off lenses with frame purchase |
| 6/8/2024 | 40% off lenses with frame purchase |
| 7/8/2024 | 50% off lenses with frame purchase |
| 8/12/2024 | 50% off lenses with frame purchase |
| 9/9/2024 | 50% off lenses with frame purchase |
| 10/9/2024 | 50% off lenses with frame purchase |
| 11/12/2024 | 50% off lenses with frame purchase |
| 12/15/2024 | 50% off lenses with frame purchase |
| 1/11/2025 | 50% off lenses with frame purchase |
| 2/11/2025 | 50% off lenses with frame purchase |
| 3/5/2025 | 50% off lenses with frame purchase |

| | |
|---|---|
| 4/6/2025 | 40% off prescription glasses |
| 5/2/2025 | 40% off prescription glasses |
| 6/18/2025 | 50% off lenses with frame purchase |
| 7/14/2025 | 40% off prescription glasses |
| 08/11/2025 | 40% off prescription glasses |
| 9/28/2025 | 40% off prescription glasses |
| 10/2/2025 | 40% off prescription glasses |
| 11/4/2025 | 40% off prescription glasses |
| 12/5/2025 | 50% off lenses with frame purchase |
| 1/15/2026 | 50% off lenses with frame purchase |
| 2/22/2026 | 40% off prescription glasses |
| 3/10/2026 | 40% off prescription glasses |
| 4/8/2026 | 40% off prescription glasses |
| 5/3/2026 | 40% off prescription glasses |
| 6/22/2026 | 50% off lenses with frame purchase |
| 8/6/2026 | 40% off prescription glasses |
| 9/13/2026 | 40% off prescription glasses |
| 10/3/2026 | 40% off prescription glasses |
| 10/27/2026 | 40% off prescription glasses |

20. This practice continues to this day. Here is the front page of the LensCrafters website on October 27, 2026:






WARREN TERZIAN LLP

21. Whichever of these types of advertisements LensCrafters uses, the message is the same—when a customer is deciding whether to purchase a pair of glasses at a LensCrafters store or on lenscrafters.com, they are told that if they purchase glasses now, they will get the glasses at a price that is deeply discounted from the regular price. But in truth and fact, there is no regular price—the advertised glasses are always discounted. As a LensCrafters associate admitted, "There's never any set price because there's always a deal going on."[2]

22. The offer in effect when Plaintiff bought stated "Offer valid through 12/2/2024." Captures from December 15, 2024, January 11, 2025, February 11, 2025, and March 5, 2025 each show the same offer—"50% off lenses with frame purchase." Throughout the class period, each expiring offer has been followed by another. What expires is the banner; the discount never does.

23. And whatever form the advertisement takes, LensCrafters applies the entire advertised discount to the lenses and none of it to the frames. Its own terms say so: "Savings applied to lenses." That is true whether the headline reads "50% off lenses with frame purchase" or "40% off prescription glasses"—when the customer buys glasses, the purchase is separated into a frame price and a lens price, and the reduction comes off the lens line alone. The size of the advertised discount therefore depends entirely on the price LensCrafters assigns to its lenses. Every dollar added to that price enlarges the apparent savings, because the customer still pays the discounted price LensCrafters set out to charge. A lens priced at $655 and sold at $327.50 yields advertised savings of $327.50; the same lens priced at $400 and sold at the same $327.50 yields advertised savings of $72.50. The higher the stated lens price, the larger the discount LensCrafters can advertise.

24. And that is what LensCrafters has done. The lens prices it states are a multiple of what the same lenses sell for elsewhere—including at EssilorLuxottica's

[2] https://www.reddit.com/r/glasses/comments/15nwaix/since_lenscrafters_prescription_glasses_are_very/.

own other businesses. EssilorLuxottica manufactures the lenses sold on lenscrafters.com , and it also owns and operates eyebuydirect.com and framesdirect.com, which sell lenses manufactured in the same facilities. Counsel compared the price of the same lenses across all three websites—same frames (Ray-Ban RB4340V), same prescription, same lens type (clear), same thickness (1.59 index), same material (polycarbonate), and same finishings (anti-scratch and UV protection).

25. These are the prescription lens prices when purchased on lenscrafters.com, eyebuydirect.com, and framesdirect.com:

LensCrafters:

Your prescription details

| | SPH | CYL | AXIS | ADD | PD |
|---|---|---|---|---|---|
| OD | -2.0 | -1.0 | 100.0 | | 61.0 |
| OS | -2.75 | -0.75 | 90.0 | | |



Save for later Remove

Ray-Ban

RB4340V WAYFARER EASE OPTICS $198.00

Your lenses Edit

Vision need: Single vision

Lens type: Clear

Thickness: Premium - Thin

Finishings: No treatment
Scratch-resistant treatment,
UV protection

Lens brand: LensCrafters lenses ~~$215.00~~ $107.50

Prescription details added

PROMOTION APPLIED – $107.50

SUBTOTAL $305.50

Eyebuydirect:




FramesDirect:




26. As this comparison shows, the lenses on lenscrafters.com are much more expensive than on the other websites. At lenscrafters.com, the price of the lenses is $107.50, which is advertised as “50% off” the crossed-out “retail” price of $215.00. Meanwhile, on eyebuydirect.com, the same lenses are $19.95. And on framesdirect.com, the same lenses are $42.49.

27. In truth, the lenses cost almost nothing to produce. One person who has worked for multiple optical companies over the years discussed the fact that "Essilor-Lux[ottica] has their hands in every aspect of the optical world and it gives them a death grip on the market. When I worked at a local family owned optical, they contracted with an Essilor lab. I edged the lenses in-house for all [single vision] prescriptions. It would cost the optical roughly $3-$7 for the lenses."[3]

28. LensCrafters may, in fact, sell some lenses at the reference price to people who already own frames. But that is an entirely different type of transaction—one that LensCrafters handles only in-store on a case-by-case basis. "It may be possible to re-use your frames," LensCrafters warns customers, "but it depends on their condition, your particular prescription, and the lenses and options you choose. Even when frames are in perfect condition, removing old lenses and replacing them with new lenses is stressful on a frame."[4] Moreover, the LensCrafters customers who make up the putative class in this case are purchasing a single product—a pair of glasses, including both a frame and lenses—and that is whom LensCrafters' advertising addresses. Every offer requires a "complete pair (frame + lenses) purchase," and every such purchase receives the advertised discount. Each offer carries an expiration date, and each is replaced by another. Purchasers of advertised glasses never pay the stated price.

29. Defendants inflate their stated lens prices because doing so lures consumers into believing they are getting bargains when they are not. "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992) (cited with approval in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)).

---

[3] https://www.reddit.com/r/glasses/comments/1e65or7/why_are_glasses_so_damn_expensive/.

[4] https://www.lenscrafters.com/lc-us/customer-service/faq.

30. Defendants' false reference pricing scheme conveyed false information to consumers about the value and worth of the products they sell. Academic literature and consumer studies show that false price comparisons influence consumer behavior and that reasonable consumers are likely to infer that the "retail" price connotes the "true value" of the product being purchased. They also show that this scheme is likely to deceive consumers by creating illusions of savings that the consumer thinks they need to take advantage of by purchasing the product now rather than risk losing the purported savings or continuing to look for a better deal elsewhere. They further show that as discount sizes increase, consumers' perceptions of value and their willingness to buy merchandise increases, while their intention to search for a lower price decreases.

31. Academic research over the last 30 years has consistently borne out the fact that advertisers use false reference pricing because it successfully drives demand. "Decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not,* J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin*, The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003). "Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011). "[C]onsumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

32. Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have or at a price they otherwise would not have, and/or purchase products from a specific retailer.

33. No reasonable consumer, knowing that LensCrafters' advertised glasses are always discounted and that the advertised "regular" price is one LensCrafters does not charge for those glasses, would have purchased glasses for what they paid. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (restitution available under California law when "the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately . . . UCL and FAL restitution is based on what a purchaser *would have paid at the time of purchase had the* purchaser received *all the* information") (emphasis in original).

34. Moreover, as Defendants' false discount scheme artificially inflates consumer demand for Defendants' merchandise, consumers pay an objectively ascertainable premium for their merchandise compared to what they would have paid absent the scheme.

35. As such, Defendants have been unjustly enriched both by the number of sales they made that would not have been made absent the false discount scheme, and by selling their merchandise at prices that they otherwise would have been unable to obtain for their merchandise.

36. Defendants' false discount scheme violates California law in a number of ways.

37. First, it constitutes an unfair and fraudulent business practice under California's Unfair Competition Law (UCL).

38. Second, it constitutes a false advertising scheme under California's False Advertising Law (FAL).

39. Third, it constitutes an unlawful business practice under the UCL because it violates sections 17500 and 17501 of the FAL.

40. Fourth, it constitutes an unlawful business practice under the UCL because it violates the Consumer Legal Remedies Act ("CLRA"), which prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(13).

41. Fifth, it constitutes an unlawful business practice under the UCL because it violates federal law and regulations. The Federal Trade Commission Act ("FTCA") prohibits unfair or deceptive acts affecting commerce, as well as false advertising. 15 U.S.C. §§ 45(a)(1), 52, and requires that an advertised reference price be "one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based." 16 C.F.R. § 233.1(b).

42. The FTCA specifically calls out false reference pricing schemes as deceptive acts. "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article." 16 C.F.R. § 233.1(a). But if "the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the 'reduced' price is, in reality, probably just the seller's regular price." *Id.*

43. Sixth, it constitutes an unlawful business practice under the UCL because it violates California Business and Professions Code section 651. Section 651 makes it "unlawful for any person licensed under this division . . . to disseminate or cause to be disseminated any form of public communication containing a false, fraudulent,

misleading, or deceptive statement, claim, or image for the purpose of or likely to induce, directly or indirectly, the rendering of professional services or furnishing of products in connection with the professional practice or business for which he or she is licensed." Cal. Bus. & Prof. Code § 651(a). A statement is misleading under section 651 if it "[c]ontains a misrepresentation of fact" or "[i]s likely to mislead or deceive because of a failure to disclose material facts." *Id.* § 651(b)(1)–(2). Section 651 regulates price advertising in particular: "Price advertising shall not be fraudulent, deceitful, or misleading, including statements or advertisements of bait, discount, premiums, gifts, or any statements of a similar nature." *Id.* § 651(c). Defendants are "licensed" within the meaning of section 651 because they are registered with the State Board of Optometry to dispense prescription eyewear, and "license" under the Business and Professions Code includes "registration." *Id.* § 23.7. Defendants' advertising violates section 651 because its price advertising is misleading: it represents that glasses are discounted from a regular price at which LensCrafters does not sell them, and it inflates the stated lens price from which those discounts are measured.

## V. Specific Allegations

44. On November 15, 2024, plaintiff Melissa Velasquez went to a LensCrafters store in Burbank, California. The store advertised that if she purchased a pair of glasses, she would receive 50% off the lenses, as well as an additional $50 off. She purchased a pair of RayBan RB5154 frames at a retail price of $210. For lenses, she selected single-vision, 1.67 high-index lenses with blue-violet light filtering, anti-reflective and anti-scratch coating, and UV protection. The lenses were advertised as having a retail price of $655, with a "50% off" price of $327.50. With an additional $50 off, Plaintiff was charged $277.50 for the "discounted" lenses:


WARREN TERZIAN LLP



LENSCRAFTERS

LensCrafters 7464
200 E Cypress Ave
Burbank, CA 91502
United States
818-557-1659

Receipt #: 1056844
Date: 11/15/24 @ 9:04 PM
Store: 7464 Register: 1
Cashier: Anush 772000
Salesperson: 772000 (Anush)

| Item | Qty | Price | Amount |
|---|---|---|---|
| Order For: Melissa Velasquez | | | |
| Sales Order: 1020683917464 | | | |
| RX5154, Clr, 51/21/145 | | | |
| 8053672832839 | 1 | 210.00 | 210.00 |
| Sales Order 1020683917464 [Frame] | | | |
| SV RB 1.67 Equalized Blu w/ OPT+ | | | |
| 20500001588643 | 1 | 655.00 | 277.50 |
| 11661-$50 Off Complete Pair | | | (50.00) |
| 24280-50% OFF LENSES | | | (327.50) |
| Sales Order 1020683917464 [Lens] | | | |
| Single Vision RB Equalized II DST | | | |
| Hi-Index 1.67 | | | |
| Authentic Lens Finishing | | | |
| Blue Filter Ease | | | |
| DST Processing | | | |
| RB Optimized + Anti-Reflective | | | |
| UV Protection | | | |
| One Year Eyewear Protection Plan | | | |
| 410000225189 | 1 | 34.99 | 34.99 |
| Sales Order 1020683917464 [EPP] | | | |

45. Here is the same set of glasses on lenscrafters.com (without the additional $50 off) with a lens price of "50% off" the "retail" price of $655.00, or $327.50:



46. Counsel compared these lens prices with those of eyebuydirect.com and framesdirect.com. (Because the lenses Plaintiff purchased carry Ray-Ban branding, and because the other two websites do not specify whether their lenses are Ray-Ban branded, counsel used the lower-priced LensCrafters-branded lenses—which have a "retail" value of $615.00, with a "50% off" price of $307.50—for the comparison rather than the Ray-Ban Authentic lenses Plaintiff purchased. The comparison therefore understates the disparity.)




47. On eyebuydirect.com, the same lenses for the same frames—single vision, with a 1.67 index, blue-violet light filtering, anti-scratch and anti-reflective coating, and UV protection—and, like the Ray-Ban and LensCrafters lenses, manufactured by EssilorLuxottica—cost only $129.95:


WARREN TERZIAN LLP




48. And at framesdirect.com, the same lenses, also manufactured by EssilorLuxottica, in the identical frames cost $124.09 (ostensibly discounted from another false reference price of $364.98):



49. As can be seen, the same lenses (in the same frames) cost roughly $180 less at two other companies owned by Defendants—$129.95 at eyebuydirect.com and $124.09 at framesdirect.com, against the $307.50 that LensCrafters charges after applying its advertised 50% "discount." And the "retail" price of the identical lenses was at least $615 at lenscrafters.com, $364.98 at framesdirect.com, and $129.95 at eyebuydirect.com.

50. Plaintiff believed she was receiving a substantial discount off the price of the glasses she purchased.

51. Had Plaintiff known that Defendants' false discount scheme was designed to dupe consumers like Plaintiff into believing they were getting a special discount, when in fact the "discounts" were not actually discounts, she would not have purchased Defendants' glasses for the price she paid.

52. Moreover, Defendants' false discount scheme artificially inflated consumer demand for Defendants' products, such that Plaintiff paid an objectively ascertainable premium for Defendants' products compared to what she would have paid absent the scheme.

## VI. CLASS ALLEGATIONS

53. Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23 and seeks certification of the following class against Defendants:

> All California residents who, within the applicable statute of limitations (the "Class Period"), purchased one or more pairs of glasses from a LensCrafters store in California or on lenscrafters.com, where an advertised percentage discount was applied to the lens price, and who have not received a refund or credit for their purchase(s) (the "Class").

54. Excluded from the Class are Defendants and their parent companies, subsidiaries, and affiliates, as well as their respective officers, employees, agents, and affiliates. Also excluded from the Class is any judicial officer who presides over this

action.

55. Plaintiff reserves the right to expand, limit, modify, or amend the class definition, including adding subclasses, in connection with her motion for class certification or at any other time, based on, inter alia, changing circumstances or new facts obtained during discovery.

56. The Class is so numerous that joinder of all members is impracticable. On information and belief, Plaintiff believes that the proposed Class contains thousands of individuals. The precise number of Class members is unknown to Plaintiff.

57. Plaintiff's claims are typical of the Class because all Class members were deceived, or were likely to be deceived, by Defendants' false discount scheme. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

58. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to the Class.

59. A class action is the superior procedure to vindicate the interests of Plaintiff and the Class. The amount by which Defendants were unjustly enriched at the expense of individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims. It would thus be virtually impossible for Plaintiff and the Class to obtain effective redress through individual actions. Moreover, absent a class action, the equitable rights of Class members and the general public would likely not be vindicated, and Defendants will be permitted to remain unjustly enriched by their fraudulent and deceptive misdeeds.

60. This action involves common questions of law and fact that predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

a. whether, during the Class Period, Defendants falsely advertised price discounts on their glasses;

b. whether Defendants continuously advertised glasses as discounted from a regular price that Defendants did not charge for those glasses;

c. whether, during the Class Period, the non-discounted price was the prevailing price within the three months preceding each sale, and if not, whether the advertisement clearly specifies the last time the non-discounted price prevailed;

d. whether, during the Class Period, Defendants' advertised sale prices and percentage-off discounts reflected any actual discounts or savings;

e. whether, during the Class Period, Defendants' customers paid a premium for their glasses as a result of Defendants' false discount scheme;

f. whether Defendants' conduct constitutes a violation of the UCL, FAL, and CLRA as alleged herein;

g. whether Defendants' conduct constitutes a violation of California and federal pricing regulations; and

h. whether Class members are entitled to restitution, public injunctive relief, and/or damages as a result of Defendants' false discount scheme.

61. All Class members were exposed to Defendants' false discount scheme. Given the uniformity of Defendants' false advertising, it can be reasonably inferred that misrepresentations or omissions of material fact were uniformly made to all members of the Class. Given that the purpose of the scheme was to dupe consumers into thinking they were buying discounted products, and that the discounts were substantial, it can be reasonably presumed that the Defendants' false advertising affected the purchasing decisions of all Class members. It can also reasonably be presumed that Class members uniformly paid more for their items than they would have had the actual retail prices been truthfully advertised.

62. Absent public injunctive relief, California consumers who are potential

customers of Defendants are susceptible to future harm from Defendants' false discount scheme.

63. On information and belief, Defendants keep computerized records of their customers. Defendants have one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VII. Causes of Action

### First Cause Of Action

### Unfair Competition, Cal. Bus. & Prof. Code § 17200 et seq., against Defendants

64. Plaintiff realleges all of the allegations in prior paragraphs.

65. Plaintiff brings this claim individually, on behalf of the members of the proposed Class, and on behalf of the general public against Defendants for violations of the UCL.

66. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200. Liability under the UCL attaches when a party engages in unfair, fraudulent, or unlawful practices, regardless of the party's state of mind.

Unfair Business Practices

67. A business act or practice is unfair under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

68. Defendants' false discount scheme constitutes an unfair business practice because the scheme misled customers, offended an established public policy of transparency in pricing, and constituted immoral, unethical, oppressive, and

unscrupulous activity that is substantially injurious to consumers.

69. The harm to Plaintiff and members of the proposed Class outweighs any rationale for Defendants' practices. There were alternative means of furthering Defendants' legitimate business interests other than deceiving their customers.

Fraudulent Business Practices

70. A business practice is fraudulent under the UCL if it is likely to deceive consumers.

71. Defendants' false discount scheme constitutes a fraudulent business practice because Defendants deceived Plaintiff and members of the proposed Class into purchasing glasses under the false pretense that they were buying them at a discount. In fact, Defendants' glasses are continuously discounted, the advertised "regular" price is one Defendants do not charge purchasers of advertised glasses, and the discounts Defendants advertise as expiring are replaced month after month by new ones. The price from which the "discount" was taken is a sham.

72. Plaintiff and members of the proposed Class relied on Defendants' fraudulent and deceptive representations in its false discount scheme. These misrepresentations played a substantial role in Plaintiff's and members of the proposed Class's decision to purchase products at a purportedly steep discount. Plaintiff and members of the proposed Class would not have purchased the products that they did for that price that they paid without Defendants' misrepresentations.

Unlawful Business Practices

73. A business practice is unlawful under the UCL if it violates any other law or regulation.

74. Defendants' false discount scheme violates the FAL, the CLRA, the FTCA, federal regulations, and California Business and Professions Code section 651.

75. Defendants' unlawful, unfair, and fraudulent business practices have unjustly enriched Defendants at the expense of Plaintiff and members of the proposed Class.

76. Plaintiff and members of the proposed Class are entitled under the UCL to restitution to Plaintiff and members of the proposed Class to the extent of Defendants' unjust enrichment as a result of the scheme, or such other amount as the Court may find equitable.

## SECOND CAUSE OF ACTION

### False Advertising, Cal. Bus. & Prof. Code § 17500, against Defendants (public injunctive relief only)

77. Plaintiff realleges all of the allegations in prior paragraphs.

78. Plaintiff brings this claim individually, on behalf of the members of the proposed Class, and on behalf of the general public against Defendants for violations of section 17500 of the FAL.

79. The FAL makes it unlawful for a business that intends to sell a product to falsely advertise that product. Cal. Bus. & Prof. Code § 17500.

80. Defendants' false discount scheme violates section 17500 because Defendants' advertisements falsely and misleadingly claim that (a) glasses are discounted from a regular price that Defendants do not charge purchasers of those glasses, and (b) those discounts are available for a limited time when in fact they are replaced month after month.

81. Defendants' false advertising unjustly enriched Defendants at the expense of Plaintiff.

82. Defendants' false discount scheme is ongoing and continues to cause harm to the general public.

83. Absent public injunctive relief, California consumers who are potential future customers of Defendants are susceptible to harm from Defendants' false discount scheme.

84. Plaintiff and members of the proposed Class are entitled under section 17500 of the FAL to public injunctive relief enjoining Defendants' use of its unlawful, unfair, and fraudulent false discount scheme in California in the future. This relief



WARREN TERZIAN LLP

would benefit the general public by preventing Defendants from continuing to deceive California consumers.

### Third Cause Of Action

### False Advertising, Cal. Bus. & Prof. Code § 17501, against Defendants

85. Plaintiff realleges all of the allegations in prior paragraphs.

86. Plaintiff brings this claim individually, on behalf of the members of the proposed Class, and on behalf of the general public against Defendants for violations of section 17501 of the FAL, which prohibits retailers from advertising that an item is discounted from a former price unless the alleged former price was the prevailing market price within the prior three months (unless the advertisement clearly specifies the last time the alleged former price did prevail). Cal. Bus. & Prof. Code § 17501.

87. Defendants' false reference pricing scheme violates section 17501 because Defendants' advertisements falsely and misleadingly claim discounts from fictional former prices that are not the prevailing market prices.

88. LensCrafters' advertisements are former price advertisements within the meaning of section 17501. Each lens price LensCrafters displays with a strikethrough, and each "___% off" it advertises, represents to consumers that the lenses have been and regularly are sold at the higher price. California regulations provide that "former price" as used in section 17501 "includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly--,' 'regularly--,' 'usually--,' 'originally--,' 'reduced from____________,' 'was ____________ now____________,' '____________% off.'" Cal. Code Regs. tit. 4, § 1301; *see Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722–23 (2018) (quoting § 1301 as the meaning of "former price" "[a]s used in section 17501"). LensCrafters' own offer terms describe the tag price as the baseline from which its discounts are taken—"Discounts are off tag price"—and a price from which a discount is taken is the price the seller represents as the regular, former price.

89. Defendants' false advertising misled Plaintiff and members of the

proposed Class.

90. Defendants' false advertising unjustly enriched Defendants at the expense of Plaintiff and members of the proposed Class.

91. Plaintiff and members of the proposed Class are entitled under section 17501 of the FAL to restitution to Plaintiff and members of the proposed Class to the extent of Defendants' unjust enrichment as a result of the scheme, or such other amount as the Court may find equitable.

## FOURTH CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act, Cal. Civil Code § 1770(a)(13), against Defendants

92. Plaintiff realleges all of the allegations in prior paragraphs.

93. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants for violation of the CLRA.

94. Plaintiff is a consumer. She made her purchase from Defendants for personal, family, or household purposes.

95. The CLRA prohibits "making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(13).

96. Defendants violated section 1770(a)(13) by falsely representing that glasses were discounted from a regular price, when in fact Defendants do not charge purchasers of those glasses that price and continuously sell those glasses at the advertised discount. Defendants separately violated section 1770(a)(13) by representing discounts measured from stated lens prices that are not the prevailing market prices for those lenses.

97. Plaintiff was misled by these false representations, which were material to her decision to purchase Defendants' products.

98. Defendants' false discount scheme injured Plaintiff and unjustly enriched Defendants.



WARREN TERZIAN LLP

99. Plaintiff and members of the proposed Class are entitled under the CLRA to restitution to Plaintiff and members of the proposed Class to the extent of Defendants' unjust enrichment as a result of the scheme, or such other amount as the Court may find equitable.

100. Plaintiff and members of the proposed Class also seek compensatory and punitive damages.

101. At least 30 days prior to filing the first amended complaint, Plaintiff provided Luxottica notice in writing via certified mail of the violations and demanded that it cure its violations. They did not do so.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the members of the proposed Class, requests that this Court award the following relief against Defendants:

a. an order certifying the Class and designating Plaintiff as Class Representative and her counsel as Class Counsel;

b. restitution of all unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of their unlawful, unfair, and fraudulent business practices and their false advertising as described herein;

c. a public injunction under the Second Cause of Action, pursuant to California Business and Professions Code § 17535, for the benefit of California consumers, enjoining Defendants from making or disseminating, or causing to be made or disseminated, to consumers in California any statement concerning the pricing of their products that is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading;

d. compensatory damages;

e. punitive damages; and

f. attorneys' fees and costs.

Dated: October 29, 2026

**WARREN TERZIAN LLP**

Thomas D. Warren

*Counsel for Plaintiff and Proposed Class Counsel*

## DEMAND FOR JURY TRIAL

Plaintiff Melissa Velasquez demands a trial by jury on all issues so triable.

Dated: October 29, 2026

**WARREN TERZIAN LLP**

Thomas D. Warren

*Counsel for Plaintiff and Proposed Class Counsel*